## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HOPKINS MANUFACTURING CORP.,

      Plaintiff,

      v.

CEQUENT PERFORMANCE PRODUCTS,
INC.,

      Defendant.

Case No. 14-CV-2208-JAR

## MEMORANDUM AND ORDER

Plaintiff Hopkins Manufacturing Corporation ("Hopkins") filed this single-count action for alleged patent infringement of U.S. Patent No. 6,837,551 ("'551 Patent") by Defendant Cequent Performance Products, Inc. ("Cequent"). On February 10, 2015, this Court granted a motion to stay the case pending *inter partes* review ("IPR") of the patent by the United States Patent and Trademark Office ("USPTO"). Following the cancellation of Hopkins's claims, this Court lifted the stay and granted summary judgment in favor of Defendant on December 12, 2016.[1] This matter is before the Court on Defendant's Motion for Attorneys' Fees (Doc. 34) under § 285 of the Patent Act.[2] The motion is fully briefed, and the Court is prepared to rule.[3] For the reasoning explained more fully below, the Court denies Defendant's motion for attorneys' fees.

---

[1] Doc. 31.

[2] 35 U.S.C. § 285.

[3] Hopkins requested oral argument in its briefing, but this request is denied because the Court found the briefing and evidence submitted sufficient to render a decision in this matter. D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative.") (emphasis added).

# I.    Procedural Background

This Court has a limited history with the parties and this matter.  The Complaint in this matter was filed on May 2, 2014 alleging infringement of the '551 Patent.  Cequent moved to stay the case pending *inter partes* review before the United States Patent and Trade Office ("USPTO") Patent Trial and Appeal Board ("PTAB") on January 23, 2015.[4]  United States Magistrate Judge James P. O'Hara granted the motion to stay the case pending *inter partes* review on February 10, 2015.[5]  Following the USPTO's decision to institute *inter partes* review and Hopkins voluntarily cancelling its claims, Cequent filed a motion to lift the stay and for summary judgment.[6]  Cequent filed summary judgment seeking judgment in its favor to proceed as the prevailing party for purposes of seeking attorney's fees under § 285 of the Patent Act. Cequent filed summary judgment after Hopkins refused a consent judgment under Fed. R. Civ. P. 41(a)(2), and Hopkins took the position that stipulated dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) would be sufficient to establish prevailing party status.[7]  On December 12, 2016, the Court granted summary judgment in Cequent's favor, and it also held that Rule 41(a)(1)(A)(ii) would be insufficient to give Cequent prevailing party status.[8]  Given its status as the prevailing party, Cequent moves the Court to issue attorneys' fees under § 285 of the Patent Act.[9]

---

[4] Doc. 23.

[5] Doc. 26.

[6] Doc. 27.

[7] Doc. 28 at 2; Doc. 29 at 11.

[8] Doc. 31 at 10.

[9] Doc. 34.

## II.    Factual Background

Both parties submitted lengthy factual contentions—some of which were submitted without citation to the record.[10]  The Court finds the following facts material to the motion for attorneys' fees and supported by record evidence.

Cequent, and its predecessor Tekonsha, produce trailer brake controllers, which connect trailers to vehicles.  Tekonasha's line of brake controllers has been around since the 1960s, and Cequent acquired the brand in the early 2000s.  The USPTO has awarded Cequent several brake controller patents, including U.S. Patent Nos. 6,068,352 ("'352 Patent"), 6,012,780 ("'780 Patent"), and 6,445,993 ("'993 Patent").

Hopkins, a Cequent competitor, also produces trailer brake controllers.  Both Cequent and Hopkins create trailer brake controllers in the "do-it-yourself" consumer market.  ████

████████████████████[11]  █████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████    ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████  Hopkins created the Agility line of brake controllers utilizing proportional brake technology in 2007.  Hopkins also created the Insight brake controller utilizing a combination of proportional and timer-based technology in 2010.

---

[10] See D. Kan. Rule 7.6(a)(2) (instructing parties to include in briefs "a concise statement of the facts, with each statement of fact supported by reference to the record").  The Court declines to comb through the voluminous exhibits submitted to find evidence of the facts proposed that do not cite to the record.

[11] Doc. 38-2.

### A.   Michigan Litigation

In December 2013, Cequent sued Hopkins for patent infringement on Cequent's '352, '780, and '993 Patents in the United States District Court for the Eastern District of Michigan (the "Michigan Litigation").[12]

#### 1.   *Inter Partes* Review

During the pendency of the Michigan Litigation, Hopkins filed petitions for *inter partes* review with the USPTO against Cequent's '352, '780, and '993 Patents. The USPTO denied Hopkins's petition for *inter partes* review on the '780 and '352 patent, stating Hopkins failed to "demonstrate[] a reasonable likelihood that [Hopkins] would prevail" in proving that at least one challenged claims is unpatentable.[13] The USPTO denied Hopkins's petition for *inter partes* review on nine of the claims against the '993 Patent, but it granted institution of *inter partes* review on twelve of the claims because "there [was] a reasonable likelihood [Hopkins] would prevail."[14] The PTAB instituted *inter partes* review on the '993 Patent. On July 28, 2016, the USPTO issued its final decision in *inter partes* review, and it found all claims for which *inter partes* review was instituted as unpatentable on anticipation and obviousness grounds.[15]

#### 2.   Proceedings Before the Michigan Court

Following the USPTO's decision in *inter partes* review, the Eastern District of Michigan lifted the stay. On January 1, 2017, the Eastern District of Michigan issued an order construing disputed claims limitations.[16] In this Order, the Court concluded that the USPTO's claim

---

[12] *Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*, No. 13-cv-15293 (E.D. Mich.).

[13] Doc. 36-16 at 2; 36-17 at 2.

[14] Doc. 36-18 at 2.

[15] Doc. 42-14 at 3.

[16] Doc. 42-16.

construction of the '993 Patent in its final written decision was "well reasoned."[17] The trial on

the '352, '780, and '993 Patent is set for July 2017.

**B.    Hopkins's Purchase of '551 Patent**

The '551 Patent was issued to United States Gear Corporation.  In June 2006, it was

purchased by AP Products.  AP Products sold a different type of brake controller called the

"Unified Tow Brake." ███████████████████████████████████████████

███████████████████████████ From the time AP Products purchased the '551

Patent, it felt that it had a legitimate potential infringement cause of action against Cequent.[18]

However, AP Products was primarily interested in developing and expanding sales of the Unified

Tow Brake.  With the economic downturn of 2007 and 2008, AP Products was not in a financial

position to begin a patent-litigation suit against Cequent.  AP Products did not send a notice of

infringement to Cequent because it did not want to run the risk of having to defend against a

declaratory judgment action by Cequent.

Hopkins had researched and been aware of the '551 Patent for years.[19] ██████████

████████████████████████ Hopkins specifically modified the design of its Agility

brake controller to avoid infringing on the '551 Patent. ████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████

In 2009, Hopkins reached out anonymously through its attorney to AP Products about the

possibility of licensing the '551 Patent. ██████████████████████████████

---

[17] *Id.* at 44.

[18] Doc. 42-18 ¶ 7.

[19] Doc. 38-8 at 1, 3.

████████████████████████████████████████████████

████ Hopkins and AP Products could not agree to a royalty rate in 2009.

From May 2013 to February 2014, AP Products was involved in a significant lawsuit relating to the line of business that it purchased with the '551 Patent. As that lawsuit neared its end, AP Products's president learned through a mutual customer that Hopkins was looking to make changes in its sales representation. AP Products and Hopkins began discussing the sale of the '551 Patent.

On April 23, 2014, Hopkins purchased the '551 Patent from AP Products. AP Products agreed to exit the market for the product covered by the '551 Patent, which allowed Hopkins to sell that product line. When Hopkins purchased the '551 Patent, Hopkins obtained the "right to sue for and collect past and future damages for infringement."[20] ████████████████

████████████████████████████████████████████████

████████████████████████████[21]

### C.    Kansas Litigation

On May 2, 2014, Hopkins filed the instant matter alleging that the Tekonsha brand P3, Prodigy P2, and Primus IQ brake controllers infringe on the '551 Patent.[22] According to the Scheduling Order issued in this matter, Cequent took the position that the '551 Patent was invalid due to prior art.[23] Cequent, therefore, warned Hopkins it intended to petition for *inter partes* review before the USPTO to invalidate the '551 Patent if Hopkins proceeded to prosecute the case.[24] Before Cequent filed its petition for *inter partes* review, it did not provide Hopkins

---

[20] Doc. 35-11 at 6.

[21] *Id.* at 2.

[22] Doc. 1.

[23] Doc. 17 at 7.

[24] *Id.* at 7.

with any of the prior-art references that Cequent believed rendered the '551 Patent invalid when combined with Cequent's '780 Patent. Cequent moved to stay the case pending *inter partes* review, and Hopkins did not oppose.[25] United States Magistrate Judge James P. O'Hara stayed the case on February 10, 2015.[26]

### 1. *Inter Partes* Review

Cequent filed a petition for *inter partes* review with the USPTO challenging the patentability of the eight claims of the '551 Patent on grounds of obviousness. In its *inter partes* review petition, Cequent advanced five invalidity grounds based on claims that the '551 Patent was obvious in view of prior art. Three of Cequent's grounds asserted that the '551 Patent's claims were obvious in view of the '780 Patent and in view of other prior art. Hopkins responded to the petition and argued the '551 Patent claims were not invalid.

After hearing both parties' position, the USPTO found Cequent had a "reasonable likelihood [it] would prevail" on at least one of the claims challenged.[27] The USPTO disagreed with Hopkins's "unduly narrow construction of 'multi-axis accelerometer'" that it argued in its defense in its response.[28] The USPTO chose not to institute *inter partes* review on two of Cequent's invalidity grounds as they were cumulative of other grounds.[29] The USPTO, therefore, instituted *inter partes* review of all eights claims of the '551 Patent finding a reasonable likelihood that the '551 Patent's claims were obvious over the '780 Patent in combination with additional prior art.

---

[25] Docs. 23, 25.

[26] Doc. 26.

[27] Doc. 36-23 at 1.

[28] *Id.* at 7.

[29] *Id.* at 12 (declining to institute *inter partes* review on grounds 3 and 4 because Cequent "demonstrated that there is a reasonable likelihood" that they would prevail on other similar grounds).

In its order instituting *inter partes* review, the USPTO ordered Hopkins to file a response, or if it did not wish to respond, it needed to arrange a conference call with the USPTO and Cequent before the response deadline. After the deadline passed with Hopkins taking no action, Cequent contacted the USPTO and Hopkins requested a conference call. The USPTO ordered Hopkins to comply with its instructions by identifying whether it "(1) has elected not to file a Patent Owner Response, but has not abandoned the contest, or (2) has abandoned the contest with an explanation that [Hopkins] understands such abandonment will lead to cancellation of its involved claims under 37 C.F.R. § 42.73(b)(4)."[30] Rather than replying, Hopkins voluntarily cancelled all of the '551 Patent Claims, requested an adverse judgment, and abandoned the contest. The USPTO ordered all of the '551 Patent claims canceled.

## 2. Proceedings Before This Court

On February 10, 2016, Cequent forwarded to Hopkins what it called "a draft motion for consent judgment with the judgment for [Hopkins's] review."[31] The transmittal email requested Hopkins to "[p]lease let us know whether you agree to this language or have comments."[32] Cequent followed up on February 18, 2016 by email requesting that Hopkins "[p]lease let us know if the draft is acceptable, otherwise we will have to move for summary judgment against Hopkins."[33]

Later in the day on February 18, 2016, Hopkins responded with its comment and attached a redlined version of a proposed stipulation of dismissal. The transmittal email read:

> Attached is a redline version of what Hopkins is willing to stipulate to. When we
> had our phone call, we did not discuss a consent judgment, Dave stated you

---

[30] Doc. 36-25 at 2–3.

[31] Doc. 28-4.

[32] *Id.*

[33] Doc. 28-5.

needed an express acknowledgment that Cequent is the prevailing party in the stipulation. We have included such in this version along with a little more factual context and we don't believe a consent judgment is appropriate. Further, the attached will be self-executing and require no further action by the Court on this issue. Given what Hopkins is willing to stipulate to in this version, a motion for summary judgment by Cequent would be unnecessarily complicating the matter and driving up costs for no reason we can discern.[34]

Cequent did not respond to Hopkins' email or request any changes to Hopkins' proposed stipulation of dismissal before filing its Motion to Lift the Stay and Motion for Summary Judgment on February 24, 2016.[35]

Cequent filed a motion for summary judgment seeking prevailing party status in order to move for attorneys' fees under § 285 of the Patent Act. Hopkins opposed and argued that: (1) the USPTO's ruling rendered the action before this Court moot; (2) a judgment against Hopkins was not required to declare Cequent the prevailing party; and (3) a stipulated dismissal was sufficient. In granting summary judgment in Cequent's favor, the Court found Cequent the prevailing party and noted that a consent judgment would have been sufficient to confer prevailing party status for purposes of seeking attorneys' fees without the burden of time and resources for the litigants of filing for summary judgment.

## III.    Legal Standard

Section 285 of the Patent Act authorizes a district court to award attorneys' fees in patent litigation. It provides, in its entirety, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[36] The only constraint on a district court's discretion to award attorneys' fees in patent litigation is determining whether the case is "exceptional."[37] The

---

[34] *Id.*

[35] Doc. 29-1 ¶ 6.

[36] 35 U.S.C. § 285.

[37] *Octane Fitness LLC v. ICON Health & Fitness*, 134 S. Ct. 1749, 1756 (2014).

Supreme Court in *Octane Fitness LLC v. ICON Health & Fitness* established the standard for determining when a case is "exceptional" for purposes of awarding attorneys' fees under § 285 of the Patent Act.[38] An "exceptional" case is defined as "one that stands out from the others" with respect to (1) "the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)" or (2) "the unreasonable manner in which the case was litigated."[39]

The court may determine whether a case is "exceptional" in the "case-by-case exercise of their discretion, considering the totality of the circumstances."[40] A nonexhaustive list of factors to consider includes: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[41] "[T]here is no precise rule or formula for making these determinations,"[42] and § 285 "demands a simple discretionary inquiry."[43] The Court has cautioned that fee awards are not to be used "as a penalty for failure to win a patent infringement suit."[44] The burden of establishing an exceptional case is on the movant by a preponderance of the evidence.[45] An appellate court should apply an abuse-of-discretion standard in reviewing all aspect of a district court's § 285 determination.[46]

---

[38] *Id.*

[39] *Id.*

[40] *Id.*; *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[T]he determination of whether a case is 'exceptional' under § 285 is a matter of discretion.").

[41] *Octane Fitness*, 134 S. Ct. at 1756 n.6.

[42] *Id.* at 1756.

[43] *Id.* at 1758.

[44] *Id.* at 1753 (quoting *Park–In–Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)).

[45] *See id.* at 1758 ("[Section 285] imposes no specific evidentiary burden, much less such a high one. Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard . . . .").

[46] *Highmark*, 134 S. Ct. at 1749.

## IV. Discussion

Cequent argues that this case is exceptional on both of the *Octane Fitness* prongs. First, Cequent argues Hopkins's claims regarding the '551 Patent in this matter were objectively weak compared to Cequent's exceptionally strong invalidity grounds adopted by the USPTO. Second, Hopkins's unreasonable litigation conduct stands out. For the reasons described more fully below, the Court finds Cequent has not met the preponderance of the evidence standard to prove this case is exceptional on either prong. Neither the substantive strength of Hopkins's litigation position nor the litigation conduct render this proceeding exceptional to warrant the award of attorneys' fees.

### 1. Substantive Strength of Hopkins's Litigation Position

The Court must first determine whether the substantive strength of Hopkins's litigation position is objectively baseless to render this proceeding exceptional. Cequent argues Hopkins's infringement case was objectively baseless on three grounds—(1) the USPTO instituted *inter partes* review on the '551 Patent on all claims and rejected all of Hopkins arguments, (2) Hopkins's claim construction was legally incorrect and exceptionally weak, and (3) Hopkins conceded its validity position was weak by cancelling its claims.

A claim is objectively baseless when "no reasonable litigant could reasonably expect success on the merits."[47] Even post-*Octane Fitness*, "objective reasonableness remains a relevant factor" when considering the exceptionality of a case.[48] Courts have typically only allowed fees where "the plaintiff asserted its claim in bad faith"; "proposed a frivolous claim

---

[47] *Taurus IP, LLC v. Daimler Chrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013).

[48] *Biax Corp. v. Nvidia Corp.*, 626 F. App'x 968, 970 (Fed. Cir. 2015).

construction"; "ignored the entirety of the specification and prosecution history"; and "derived

no support from the intrinsic record."[49]

First, Cequent argues that the USPTO's determination that all of the '551 Patent claims

are invalid based on Cequent's '780 Patent establishes the objective baselessness of Hopkins's

position. In particular, Cequent argues that Hopkins knew of the '780 Patent when it filed suit in

Kansas, and that it should have known that the '780 Patent rendered the '551 Patent invalid.

Courts have found subjective bad faith where a party asserts a meritless position when it knew or

should have known the position was meritless.[50] As one district court has previously explained,

> Mere assertions that a party's arguments were without merit generally do not
> make a case "exceptional." The factors courts look to include whether a party
> knew or willfully ignored evidence of the claims' meritlessness; whether the
> meritlessness could have been discovered by basic pretrial investigation; or
> whether the meritlessness was made clear early in the litigation. If a party has set
> forth some good-faith argument in favor of its position, it will generally not be
> found to have advanced "exceptionally meritless" claims.[51]

Here, the Court finds that while Hopkins knew of the existence of the '780 Patent, there

is evidence in the record that it was not aware of the other prior art that rendered the '551 Patent

---

[49] *Sinox Co. Ltd. v. Wordlock, Inc.*, No. 14-2797, 2016 WL 1258625, at *3 (D. Colo. Mar. 31, 2016) (citing *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 11-cv-06637, 2015 WL 4940635, at *4 (N.D. Cal. Aug. 19, 2015); *see also Canvs Corp. v. Nivisys, LLC*, 14-cv-00099, 2016 WL 659155, at *2 (M.D. Fla. Feb. 18, 2016)).

[50] *See, e.g., TechRadium Inc. v. FirstCall Network, Inc.*, No. 13-2487, 2015 WL 862326, at *6 (S.D. Tex. Feb. 27, 2015) ("TechRadium knew or should have known that its claim was meritless or lacked substantive strength and TechRadium essentially relitigated arguments the court had previously clearly rejected."); *In re Unified Messaging Sols., LLC Patent Litig.*, No. 2371, No. 12 C 6286, 2015 WL 6153662, at *6 (N.D. Ill. Oct. 19, 2015); *Pure Fishing, Inc. v. Normark Corp.*, No. 10-cv-2140-CMC, 2014 WL 5474589, at *3–4 (D.S.C. Oct. 28, 2014).

[51] *TechRadium Inc.*, 2015 WL 862326, at *6 (citing *EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, 12–CV–01011–JST, 2014 WL 3726170 (N.D.Cal. July 25, 2014) (finding even when the plaintiff's argument was "quite stretched" and its conduct "difficult to explain," the court could not "quite conclude that no reasonable patentee could see an opening . . . through which the argument could be squeezed"); *Gametek LLC v. Zynga, Inc.*, No. CV 13–2546 RS, 2014 WL 4351414, at *3 (N.D.Cal. Sept. 2, 2014) (conceding that the plaintiff's briefing, which "consisted of granular parsing of the claimed steps rather than any substantive explanation of how [the invention] differed from the underlying abstract idea," was inadequate but finding that it "did not . . . descend to the level of frivolous argument or objective unreasonableness").

claims invalid.[52] Hopkins's counsel attested before Cequent filed its *inter partes* review petition, it did not provide Hopkins with any of the prior-art references that Cequent believed rendered the '551 Patent invalid when combined with Cequent's '780 Patent.[53] Thus, when the *inter partes* review petition was filed, Hopkins did not know about the prior art in combination with the '780 Patent rendering its claims invalid. No evidence was submitted to show that an investigation by Hopkins would have revealed this prior art.[54] There is certainly no evidence of "bad faith," and the record before this Court, at best, supports only the conclusion that mere negligence was involved given the lack of knowledge of the prior art.

Cequent requests that the Court ignore Hopkins's lack of knowledge of the other prior art because the inquiry should be solely objective. It cites *Kilopass Technology, Inc. v. Sidense Corp.*, which states "a determination of whether the patentee acted in subjective bad faith must take into account the totality of the circumstances and does not require a showing that the patentee had actual knowledge that its claims are baseless."[55] However, the court in *Kilopass* went on to explain "[o]bjective baselessness alone can create a sufficient inference of bad faith to establish exceptionality under § 285, unless the circumstances as a whole show a lack of recklessness on the patentee's part."[56] The Court does not find anything in the record to support

---

[52] Cequent argues that once it told Hopkins in the Scheduling Order that it intended to proceed to *inter partes* review on invalidity grounds, there should be evidence submitted about what Hopkins did with that information. This is incorrect for several reasons. First, it is Cequent's burden by a preponderance of the evidence to prove this case exceptional, not Hopkins's. *Octane Fitness*, 134 S. Ct. at 1758. Second, there is evidence in the record that while Hopkins knew Cequent intended to pursue invalidity grounds, it did not know that this was based on the '780 Patent combined with other prior art. Therefore, it had a good-faith basis to believe that the '780 Patent standing alone did not make the '551 Patent invalid.

[53] Doc. 42-2 ¶ 4.

[54] *Id.* (attesting that there was no record that copies of references to the prior art were provided to Hopkins either through formal discovery or by other means before the *inter partes* review petition was filed).

[55] No. 10-2066, 2014 WL 3956703, at * 8 (N.D. Cal. Aug. 12, 2014) (citing *Kilopass Tech., Inc. v. Sidense Corp.*, 501 F. App'x 980, 1309–12 (Fed. Cir. 2013))

[56] *Id.* (citing *Kilopass Tech.*, 501 F. App'x at 1314).

objective unreasonableness of assertion of this claim. While the USPTO agreed with Cequent in instituting *inter partes* review, nothing in its Order indicates that the infringement claim was objectively baseless on its face. Further, the circumstances show Hopkins lacked recklessness because it did not know of the prior art that was combined with the '780 Patent to make the '551 Patent invalid. There is no evidence that a pre-suit investigation or discovery following Cequent's threat of *inter partes* review would have revealed this prior art. Once Hopkins realized the invalidity of the '551 Patent upon the merits-based decision of the USPTO, it cancelled its claims.

Further, after obtaining the '551 Patent, the Court finds there was a good-faith basis for Hopkins asserting a '551 Patent infringement case. There was evidence in the record that the prior owner, AP Products, felt that it had a legitimate potential infringement cause of action against Cequent when it owned the '551 Patent. The fact that not only Hopkins, but also AP Products believed Cequent was infringing on the '551 Patent makes the assertion of this claim more reasonable, not less. Given the evidence that Hopkins did not know about the prior art in combination with the '780 Patent, there was a good-faith basis for asserting the '551 Patent infringement claim.

To the extent Cequent argues that its substantive position was so strong in petitioning for *inter partes* review that the USPTO did not institute *inter partes* review on two of its invalidity grounds, the Court finds this overstates the USPTO's findings. Cequent seems to suggest that its substantive position in *inter partes* review was "so strong" that the USPTO chose not to institute Cequent's additional invalidity grounds.[57] However, the USPTO explained in its Order it thought Cequent had a reasonable likelihood of prevailing on the other grounds of validity, and

---

[57] Doc. 36 at 7.

these two grounds" were essentially cumulative. There is absolutely no language in the USPTO's Order indicating Cequent's position was "so strong" that it rendered Hopkins's position objectively baseless. Because this Court was not presiding over the decision, the Court is unwilling to read into the USPTO's Order something that is not otherwise stated.

Second, Cequent argues that the USPTO found Hopkins's position with regards to the '551 Patent claims to be frivolous. Specifically, Cequent offers that Hopkins's "unduly narrow construction" of multi-axis accelerometer render its claim frivolous, and this is so especially in light of the USPTO's standard of "broadest reasonable interpretation." Fees have been imposed for making frivolous claim construction arguments.[58] "Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous. But, there is a threshold below which a claim construction is 'so unreasonable that no reasonable litigant could believe it would succeed.'"[59] The Court has reviewed the USPTO's order regarding institution of *inter partes* review. The USPTO explained that Hopkins offered a definition of multi-axis accelerometer "limit[ing] the meaning to an accelerometer measuring along at least two axes

---

[58] *See, e.g., Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1300–01 (Fed. Cir. 2014) (finding the district court did not abuse its discretion in imposing Rule 11 sanctions based on a claim construction that "violates nearly every tenet of claim construction and amounts to a wholesale judicial rewriting of the claim"); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 13-1908, 2014 WL 5795545, at *5 (N.D. Cal. Nov. 6, 2014) (finding by the court that "IPVX's position on how its proposed constructions would apply to the Voxer App was absurd and farfetched."); *Tech. Innovations v. Amazon.com, Inc.*, 35 F. Supp. 3d 613 (D. Del. 2014) (concluding that the claim construction based on the record, and even in light of what TI proffered as a reasonable pre-suit investigation, "was not 'objectively reasonable under the circumstances'"); *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 12-256, 2015 WL 108415, at *5 (D. Del. 2015) (finding objective baselessness when the plaintiff took a position "in the face of" evidence that directly contradicted its position). The parties dispute whether a claim may be considered frivolous if no sanction is imposed. While sanctions would be evidence of frivolity of a claim, a claim may be considered frivolous even though there is no imposition of sanctions. *See Octane Fitness*, 134 S. Ct. at 1757 ("[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."); *Chalumeau Power Sys. LLC, v. Alcatel-Lucent*, No. 11-1175, 2014 WL 4675002, at *1 (D. Del. Sept. 4, 2014) (finding the claim construction position frivolous without any mention of sanction imposition). Here, regardless of the lack of imposition of sanctions, the Court finds there was no frivolity to Plaintiff's claim construction based on the record before the Court.

[59] *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012)).

perpendicular to one another."[60] Cequent did not offer a definition, but had an expert opinion that the term means "an accelerometer that is capable of measuring acceleration along two or more different directions."[61] The USPTO, on the record currently developed and for purposes of its decision, adopted Cequent's definition and categorized Hopkin's definition as "unduly narrow."[62] The USPTO never stated that Hopkins's claim construction violated tenets of claim construction or was a judicial rewriting of the claim, or was directly contrary to a position already taken.[63] While the USPTO did not adopt Hopkins's definition because it was "unduly narrow," there is no indication that its construction rises to the level of frivolous.

Third, putting aside the USPTO's findings in instituting *inter partes* review, Cequent argues that Hopkins's voluntary cancellation of its claims renders the proceeding frivolous. In *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, the United States District Court for the Western District of New York considered a case where the plaintiff consented to cancellation of its claim at a much later stage in the proceedings.[64] The Western District of New York noted that the plaintiff "did not force [the defendant] to move to dismiss the case" and "consented to the cancellation of the patent claims," so there was no indication of subjective bad faith.[65] Here, Hopkins voluntarily cancelled its claims following the substantive findings of the USPTO.[66] It did not subject Cequent to *inter partes* review when it realized there was a low

---

[60] Doc. 36-23 at 5.

[61] *Id.*

[62] *Id.* at 5, 7.

[63] *Source Vagabond Sys. Ltd.*, 753 F.3d at 1300–01.

[64] No. 08-2299, 2016 WL 8669633, at *3 (W.D.N.Y. Aug. 19, 2016).

[65] *Id.*

[66] The Court is not persuaded by the two unpublished cases Cequent cited in support of the proposition that voluntary cancellation of claims is indicative of objective baselessness. Cequent first cites an electronically unavailable unpublished case, *Ultimate Pointer LLC v. Nintendo Co., Ltd.*, No. 14-00865, decided on March 9, 2015 by the Western District of Washington. It does not attach the case. *See* Doc 36-30 (attaching *Ultimate Pointer LLC v. Nintendo Co.*, No. 11-cv-496, 2013 WL 62553767 (E.D. Tex. Dec. 3, 2013)); D. Kan. Rule7.5(c) ("If an

probability of success going forward based on the USPTO's Order on the merits. Further, rather than replying or waiving a reply in accordance with the USPTO, Hopkins took the most direct action and simply cancelled all claims. The Court does not find voluntary cancellation of claims as indicative of subjective bad faith or objective baselessness in this case.

### 2. Unreasonable Manner of Litigation

Next, the Court must determine whether the totality of Hopkins's litigation conduct was unreasonable. Cequent argues that Hopkins's litigation conduct has been unreasonable on two grounds—(1) Hopkins purchased the '551 Patent to retaliate against Cequent for the Michigan Litigation and (2) once the claims were cancelled before the USPTO, Hopkins refused to agree to a consent judgment. Litigation misconduct "generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings."[67]

First, Cequent argues that Hopkins purchased the '551 Patent solely to retaliate against it for the Michigan Litigation. Further, Cequent argues that Hopkins filed this matter to extort a legal settlement and delay the Michigan Litigation. Indeed, "motivation" to harass or burden an

---

unpublished decision cited in a brief or memorandum is unavailable electronically . . . , it must be attached as an exhibit to the brief or memorandum."). The case that Cequent attached is analysis of a motion to strike and motion to compel unrelated to voluntary cancellation of claims for purposes of objective baselessness. *Id.* at 1. However, Hopkins attached the proper unpublished case, and the proper case also does not support the proposition that voluntary cancellation of claims proves objective baselessness. Doc. 42-22 (attaching *Ultimate Pointer LLC v. Nintendo Co., Ltd.*, No. 14-00865, slip op. at 3–4 (W.D. Wash. Mar. 11, 2015) ("The fact that plaintiff voluntarily dismissed many of the defendants after discovering that their market share and/or sales did not justify further litigation does not necessarily mean that the claims were brought in bad faith or are otherwise sanctionable.")). The other case cited, *Chalumeau Power Systems LLC v. Alcatel-Lucent*, does not support the proposition that voluntary cancellation of claims makes the claims objectively baseless. No. 11-1175, 2014 WL 4675002, at *3 (D. Del. Sept. 12, 2014). Rather, the district court found that the plaintiff's position as a whole was frivolous. *Id.* at *2. Therefore, it found that the litigation was instituted solely for the purpose of extorting a settlement, so the voluntary cancellation of claims was made only when the plaintiff realized that was not going to happen. *Id.* at *3. Here, the Court has made no such finding as to the frivolity of the claim, and there is no evidence this matter was instituted solely to extract a settlement.

[67] *Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 F. App'x 966, 973 (Fed. Cir. 2014) (citing *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 529, 549 (Fed. Cir. 2011))

opponent may be relevant to an "exceptional case" finding.[68] However, motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive.[69] A patentee's assertion of reasonable claims of infringement is the mechanism whereby patent systems provide an innovation incentive.[70] In *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, the Federal Circuit explained that there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith." [71]

Here, there is evidence that the '551 Patent was not purchased solely to retaliate against Cequent. Hopkins submitted evidence that it had attempted to license the '551 Patent from AP Products as early as 2009, which fell through. Hopkins designed around the '551 Patent ███ ██████████████████████████████████████████ AP Products then became enthralled in major litigation surrounding the '551 Patent, and the litigation ended in February 2014. When the litigation ended, AP Products contacted Hopkins about the purchase of the '551 Patent. Hopkins ultimately purchased the '551 Patent in April 2014. With acquisition of the '551 Patent, Hopkins also gained the right to sue for present and future damages for infringement. It sued Cequent in May 2014 for infringement of the '551 Patent.[72]

---

[68] *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1371 (Fed. Cir. 2017) (citing *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285.")).

[69] *Id.*

[70] *Id.*

[71] 603 F.3d 943, 954 (Fed. Cir. 2010).

[72] Cequent makes much of the fact that Hopkins instituted suit on the '551 Patent nine days after purchasing the '551 Patent. The Court does not find this is evidence of unreasonable litigation tactics because Hopkins had a good-faith basis for asserting such a right, and there is no reason it should have waited to file suit. *Contra Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15-CV-6192, 2016 WL 7165983, at *14 (S.D.N.Y. 2016) ("AlphaCap's attorneys were aware as early as June 2014 (when Alice was issued) that their infringement claims were unlikely to succeed if the validity of the AlphaCap Patents was challenged. Nonetheless, they filed this patent infringement action in the Eastern District of Texas just seven months later.").

Given the presumption that an assertion of infringement of the '551 Patent was made in good faith, the Court does not find evidence that this suit was instituted solely to delay the Michigan litigation or extort legal settlement. The president of AP Products attested that it did not assert an infringement action against Cequent in the eight years it owned the patent because it did not have the litigation budget to sustain such a suit.[73] Further, the president attested that while AP Products did not assert such a claim, it believed that it had a valid infringement claim against Cequent when it did own the '551 Patent.[74] Once Hopkins purchased the '551 Patent, it obtained the right to sue for past and future damages resulting from infringement. As the Court explained above, there was nothing objectively baseless about this suit—Hopkins had a reasonable belief of infringement of the '551 Patent. The USPTO's Order instituting *inter partes* review on all eight claims does not indicate that the assertion of the infringement claim was objectively baseless or unreasonable. And, Hopkins attested it was not aware of the prior art in combination with the '780 Patent invalidating the '551 Patent. Hopkins tested the validity of the patent on the merits by responding to the *inter partes* review petition. There was nothing vexatious about waiting for a substantive decision on the merits by the USPTO before cancelling its claims, which is exactly what Hopkins did.

Cequent also argues that the institution of the '551 Patent suit in Kansas rather than asserting as a counterclaim in the Michigan Litigation is evidence of unreasonable litigation tactics. The Court finds this argument particularly unavailing because the Michigan Litigation involves a different set of claims and other patents than the '551 Patent suit, which involves as

---

[73] Doc. 42-18.

[74] *See* Doc. 41-11 (email from Tom Manning, AP Products president, to Gary Kaminski, representing Hopkins, stating ████████████████████████████

Cequent admits, a "different type of brake controller called the 'Unified Tow Brake.'"[75] Hopkins had the right to sue in Kansas under the '551 Patent. There is nothing requiring it to consolidate its separate claim in the Michigan Litigation. The Court is unwilling to endeavor into the intent of deciding to file suit in Kansas rather than consolidating this separate suit involving a separate patent in the Michigan Litigation as a counterclaim. There is no evidence that this was a tactical decision to delay the litigation or extort a settlement. The Court does not find that filing suit in Kansas as opposed to Michigan makes this litigation vexatious or unreasonable.

Lastly, Cequent argues that Hopkins forcing Cequent to file summary judgment instead of agreeing to a consent judgment was an unreasonable litigation tactic. The Court disagrees for two reasons. First, Hopkins agreed to a stipulated dismissal under Rule 41(a)(1)(A)(ii). There was evidence submitted here and at summary judgment that Hopkins believed a stipulated dismissal would be sufficient for purposes of prevailing party status. While the Court found that Rule 41(a)(1)(A)(ii) stipulated dismissal would not be sufficient, the Court in its Order on summary judgment recognized the lack of case law on the matter.[76] The Court does not find this an entirely unreasonable position to take. Second, Hopkins submitted evidence that it attempted on February 18, 2016 to initiate a stipulation of dismissal that included language stipulating to Cequent as the prevailing party. Cequent never replied to that communication, and rather, initiated summary judgment. Both parties certainly played a role in the filing of summary judgment. The Court does not find this rises to the level unreasonable litigation conduct.

---

[75] Doc. 36 at 6.

[76] Doc. 31 at 10 ("The Federal Circuit has not addressed whether voluntary dismissal under Rule 41(a)(1)(A)(ii) is sufficient to render a defendant a prevailing party.").

## V.     Conclusion

This Court finds this matter is not exceptional to warrant the award of attorneys' fees and expenses under § 285 of the Patent Act.  The Court does not find Hopkins's infringement case was objectively baseless.  Further, the Court does not find Hopkins engaged in unreasonable litigation conduct.  With the Court's limited interaction with the parties and this matter and the limited record, there is insufficient evidence to warrant finding this case is exceptional.  It appears that the true battle is being fought in the Michigan Litigation, so this Order should not be read to limit the possible recovery of attorneys' fees in that matter.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Attorneys' Fees (Doc. 34) is **denied**.

**IT IS SO ORDERED.**

Dated: July 5, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE